**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

November 1, 2024

Hyungjoo Han, Trial Attorney
DOJ-CRM
Criminal Division, Fraud Section
1400 New York Avenue NW
8th Floor
Washington, D.C. 20005
*Counsel for Plaintiff*

Rebecca R. Yuan, AUSA
U.S. Department of Justice
970 Broad Street
Suite 700
Newark, NJ 07102
*Counsel for Plaintiff*

Abe George, Esq.
Law Offices of Abe George, P.C.
99 Wall Street
Suite 3404
New York, NY 10005
*Counsel for Defendant Abrazi*

Jose A. Muniz, Esq.
Law Offices of Jose A. Muniz
20-40 89th Avenue
Elmhurst, NY 11373
*Counsel for Defendant Baldonado*

**LETTER OPINION FILED WITH THE CLERK OF THE COURT**

Re: *USA v. Richard Abrazi*, Crim. No. 24-393 (SDW);
*USA v. Alexander Baldonado*, Crim. No. 21-430 (SDW)

Counsel:

Before this Court is a letter filed by the Government raising potential conflicts of interest relevant to the prosecutions of Defendants Richard Abrazi and Alexander Baldonado. (D.E. 11 ("Gov. Letter").)[1] For the reasons set forth herein, this Court finds that Mr. George, defense counsel for Defendant Abrazi, faces or is likely to face significant conflicts of interest. This Court further finds that, based on the record before it, these conflicts cannot be waived and thus, Mr. George is disqualified from further representation of Defendant Abrazi.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This Court writes only for the parties and, accordingly, limits its discussion of the factual and procedural background to only the facts pertinent to the instant decision.

Defendants in this matter are alleged to be co-conspirators in a health care fraud scheme. The Government alleges that "Abrazi and others paid illegal kickbacks and bribes to providers, including Baldonado, in exchange for laboratory testing orders." (Gov. Letter at 3.) More specifically, the Government alleges that Baldonado signed laboratory testing orders for expensive and medically unnecessary tests at events hosted by Alliance Laboratories ("Alliance"). (*Id.*) Alliance, which is owned by Defendant Abrazi and comprised of two related laboratories—Enigma Management Corp. ("Enigma") and Up Services, Inc. ("Up Services")—would then submit "false and fraudulent claims" to Medicare for said tests. (*Id.*) The submitted claims were allegedly in excess of $20.7 million, with Medicare paying Alliance over $2 million for the claims. (*Id.*)

The Government maintains that "from at least August 2020 until May 2021," Mr. George represented Baldonado. (*Id.* at 2.) In support, the Government points to an August 6, 2020 letter submitted by Mr. George in response to an Office of Inspector General Request for Information ("OI-2 Request") in which he represented he was Baldonado's counsel. (*Id.*; D.E. 18.) Additionally, the Government notes that Mr. George accepted a grand jury subpoena for records on Baldonado's behalf in or around January 2021. (Gov. Letter at 2.) Notwithstanding, the docket reflects that Mr. George's representation of Baldonado terminated on May 25, 2021.[2]

On June 12, 2024, the Government charged Abrazi in a one-count indictment for "conspiring to defraud the United States and to offer, pay, solicit, and receive health care kickbacks" from about 2018 to March 2024. (*Id.* at 3.) According to the Government, Abrazi paid providers kickbacks in exchange for these providers sending patient samples to Alliance and signing laboratory testing requisition forms at Alliance-organized events. (*Id.*) Alliance allegedly billed Medicare in excess of $60 million, with Medicare paying Alliance over $5 million based on the claims Alliance submitted. (*Id.*)

---

[1] Unless otherwise designated, citations to "D.E." refer to the docket entries and documents attached thereto in Defendant Abrazi's matter.

[2] Mr. George did not enter a formal appearance on behalf of Defendant Baldonado. Nevertheless, all parties agree that Mr. George was in communication with the Government on behalf of Baldonado during the investigative stage of that matter.

On June 20, 2024, Mr. George entered his appearance on behalf of Abrazi in the instant matter. (D.E. 8.) The record reflects that on June 28, 2024, Abrazi executed a waiver in which he acknowledged that Mr. George previously represented Baldonado and that "the subject matter of that representation . . . involve[d] the same issue that" Abrazi was charged with. (D.E. 11-1, Ex. A at 2.) The letter notified Abrazi that Mr. George continues to owe Baldonado a duty of confidentiality and loyalty, which could pose a potential conflict since Mr. George also owes Abrazi a duty to be a zealous advocate. (*Id.*) In the letter, Mr. George also advised Abrazi that it was in his best interest to obtain independent counsel to determine whether to effectuate a waiver. (*Id.* at 2–3.) Abrazi executed the waiver on July 1, 2024. (*Id.* at 4.)

Similarly, in a letter dated July 3, 2024, Mr. George confirmed that he spoke with Baldonado and Baldonado's counsel regarding his 2021 representation of Baldonado. (D.E. 11-2, Ex. B at 2.) Mr. George indicated his belief that he did not possess any information that could pose a substantial risk to Baldonado as a result of Mr. George's current representation of Abrazi, and that he did not have "any privileged confidential information" which could be detrimental to Baldonado and advantageous to Abrazi. (*Id.*) Mr. George requested that Baldonado waive any attorney client privilege "with respect to any information that [Baldonado] may have disclosed to [him] . . . regarding [his] prior representation" in the health care fraud matter. (*Id.*) Baldonado and his attorney, Jose Muniz, both executed the letter. (*Id.* at 4.)

On July 11, 2024, the Government filed a Letter informing this Court about an actual or potential conflict of interest in light of Mr. George's representation of Abrazi. (Gov. Letter at 1.) The Government requested that this Court hold a hearing and conduct a colloquy on the record with both Defendants to determine whether their waivers were sufficient to permit Mr. George to represent Abrazi or whether disqualification would be necessary. (*Id.* at 13.)

Pursuant to the Government's request, this Court conducted a hearing on July 30, 2024. At said hearing, Mr. George maintained that his representation of Baldonado was of a "limited scope," such that he did not obtain confidential information and thus, there is no conflict of interest. (George, D.E. 14 ("T1"), 6:18–7:5.)[3] Mr. George maintained that his representation of Baldonado has concluded in its entirety and that he would be able to provide competent and diligent counsel to Abrazi. (George, T1, 9:5–25.)

This Court conducted a colloquy with Defendant Abrazi. Abrazi confirmed his understanding of the possible conflicts of interest that could arise as they relate to Mr. George's cross-examination of Baldonado, the defenses Abrazi should be advised to raise, and whether and when he should plead guilty or proceed to trial, among others. (Abrazi, T1, 11:8–14:14.) Abrazi confirmed that he executed a written waiver, that his waiver was knowing and voluntary, and that he understood its implications. (Abrazi, T1, 16:20–25; 17:1–8, 12–14.)

This Court also conducted a colloquy with Defendant Baldonado. It was apparent to this Court that Baldonado "made it very clear that he does not believe there is any conflict."

---

[3] "T1" is the Hearing Transcript dated July 30, 2024.

3

(Baldonado, D.E. 71 ("T2"), 32:24–25.)[4]  According to Baldonado, Mr. George did not represent him at the outset of the Government's health care fraud investigation and prosecution, particularly because he—not Mr. George—produced the relevant documents the Government requested. (Baldonado, T2, 7:18–8:12, 13:13–15:11.)  Baldonado also consented to Mr. George sharing information, including privileged and confidential information from his time representing him, in Mr. George's representation of Abrazi.  (Baldonado, T2, 26:19–25.)  Despite expressing some confusion with regard to his waiver at the hearing, defense counsel for Baldonado provided this Court documentation that Baldonado retracted his July 3, 2024 waiver on July 21, 2024.  (D.E. 17.)

## II.     LEGAL STANDARD & DISCUSSION

The Sixth Amendment provides, in relevant part, that:  "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."  U.S. CONST. amend. VI.  This guarantee of effective assistance of counsel "includes 'a correlative right to representation that is free from conflicts of interest.'"  *United States v. Savage*, 85 F.4th 102, 116 (3d Cir. 2023) (quoting *Wood v. Georgia*, 450 U.S. 261, 271 (1981)).  Although defendants have the right to counsel of choice, "the potential for serious conflicts is a consideration of judicial administration that can outweigh a defendant's right to counsel of choice."  *United States v. Voigt*, 89 F.3d 1050, 1075 (3d Cir. 1996).

When there is either actual conflict found or "a showing of serious potential for conflict," "the presumption in favor of a defendant's counsel of choice is overcome" and a district court may disqualify counsel, even if a defendant has waived the conflict.  *United States v. Moscony*, 927 F.2d 742, 750 (3d Cir. 1991).  This is because a waiver "does not necessarily resolve the matter" and the court has an independent interest in protecting the fairness and truth-seeking functions of the proceedings.  *Id.* at 749; *United States v. McDade*, 404 Fed. App'x 681, 684 (3d Cir. Dec. 22, 2010).  This Court now turns to consider whether there is an actual conflict or a serious potential for conflict; a valid waiver; and assuming there is a valid waiver, whether to accept it.

### A.  Actual Conflict or Serious Potential for Conflict

An actual conflict of interest exists "whenever an attorney's loyalties are divided." *Moscony*, 927 F.2d at 750.  A potential conflict of interest exists if a defendant's interests "could place [an] attorney under inconsistent duties in the future."  *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004).  Courts may consider the Rules of Professional Conduct to assess an actual or potential conflict of interest.[5]  *See, e.g.*, *Wheat v. United States*, 486 U.S. 153, 160 (considering both the American Bar Association's Model Code of Professional Responsibility and the Rules of

---

[4] "T2" is the Hearing Transcript dated July 30, 2024, in *United States v. Alexander Baldonado*, Crim. No. 21-430.

[5] The New Jersey Rules of Professional Conduct ("NJ RPC") apply to members of the bar admitted to practice in the United States District Court for the District of New Jersey.  *See* U.S. District Court for the District of New Jersey Local Civil Rule 103.1(a); Local Criminal Rule 1.1.  Although this Court only considers the New Jersey Rules of Professional Conduct in this Letter Opinion, the New York rules governing Mr. George's conduct are indistinguishable from the NJ RPC.

Professional Conduct of the State Bar of California); *United States v. Lacerda*, 929 F. Supp. 2d 349, 357 (D.N.J. Mar. 7, 2013) (discussing the NJ RPC).

NJRPC 1.7(a) prohibits a lawyer from representing a client if "the representation involves a concurrent conflict of interest." The Rule states that a concurrent conflict of interest exists if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer." NJ RPC 1.7(a). Similarly, NJ RPC 1.9(a) prohibits a lawyer who represented a client from representing another client "in the same or substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent in writing."

Here, this Court finds that Mr. George's representation of Abrazi poses both an actual conflict of interest and a serious potential conflict in the future. As a threshold matter, Mr. George acknowledged his representation of Baldonado both at this Court's hearing as well as in the letter addressed to the Government in response to the OI-2 Request. (George, T1, 6:18–7:4; D.E. 18.) Mr. George also responded to a grand jury's subpoena for records regarding Baldonado's dealings with Alliance—directly implicating Abrazi, who is the owner. (Ex. A at 2 ("As you are aware I previously represented Dr. Baldonado in 2021 when he was asked to produce medical records and other documents pertaining to a federal grand jury subpoena.").) The Government is alleging these Defendants were co-conspirators in the same health care fraud scheme—thus, these are substantially related matters. (Han, T1, 3:7–17); *see Moscony*, 927 F.2d at 749 ("Usually, the various rights and duties of the attorney clash when a defendant seeks to waive his right to conflict-free representation in circumstances in which the counsel of his choice may have divided loyalties due to . . . prior representation of another client who is a co-defendant, *a co-conspirator*, or a government witness.") (emphasis added).

Further, Abrazi's interests are materially adverse to that of Baldonado's. In representing Abrazi, Mr. George is likely to encounter scenarios that would be beneficial to one defendant, but detrimental to the other. For example, assuming the Government calls Baldonado as a witness in Abrazi's case, Mr. George would face the task of cross-examining his former client and would "inherently encounter[] divided loyalties." *See Moscony*, 927 F.2d at 750; *United States v. Vega*, No. 18-224, 2019 WL 291166, at *4 (D.N.J. Jan. 22, 2019) (disqualifying the defendant's attorney because the attorney previously represented a co-conspirator in a case premised on the same conspiracy to distribute cocaine and marijuana underlying the defendant's prosecution). Additionally, Mr. George must continue to uphold his ethical obligations to Baldonado—including abiding by the duty of confidentiality—which could limit his ability to be a zealous advocate for Abrazi and would thereby implicate Sixth Amendment concerns. *See Moscony*, 927 F.2d at 750–51 (finding the district court properly disqualified a law firm that represented the defendant's employees from representing the defendant because the firm could use confidential information obtained from the employees to impeach them at trial and would violate of the duty of confidentiality owed to the employees).

**B. Waiver**

Notwithstanding the actual conflict or serious potential for conflict, a defendant may waive a concurrent conflict of interest by giving informed consent in writing. NJ RPC 1.9(a). A waiver may be inadequate in some cases. *United States v. Carr*, 322 F. Supp. 3d 612, 615 (E.D. Pa. 2018) (citing *Voigt*, 89 F.3d at 1075). District courts are tasked with evaluating the facts and circumstances of each case to determine whether the presumption in favor of a party's attorney of choice is overcome. *Wheat*, 486 U.S. at 164. This Court finds the presumption in favor of Abrazi's choice of counsel is overcome and rejects his waiver.

During his colloquy, Abrazi confirmed that his written waiver was knowing and voluntary and that he understood both the potential conflicts and the implications of his waiver. (Abrazi, T1, 11:8–14:4, 16:20–25; 17:1–8, 12–14.) Baldonado's colloquy, on the other hand, was much less clear. Moreover, Baldonado's counsel provided the Court with proof that Baldonado retracted his waiver. (D.E. 17.) Even if Baldonado had not retracted his waiver, this Court would still reject both waivers and find Mr. George's disqualification necessary. *See McDade*, 404 Fed. App'x at 684 (concluding the district court did not abuse its discretion by rejecting waivers where "it was far from clear that there had been an effective waiver of the conflict"); *United States v. Stewart*, 185 F.3d 112, 122 (3d Cir. 1999) ("[A] district court has discretion to disqualify counsel if a potential conflict exists, even where the represented parties have waived the conflict.") (internal citation omitted).

As the Supreme Court has acknowledged, "[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials." *Wheat*, 486 U.S. at 162–63. Having considered the facts and circumstances of this case, this Court concludes that the presumption of Abrazi's right to counsel of choice is overcome by the existent actual conflict of interest and the serious potential for conflicts of interest moving forward. *See Moscony*, 927 F.2d at 750.

### IV.    CONCLUSION

For the foregoing reasons, this Court disqualifies Mr. George as Defendant Abrazi's counsel. Defendant Abrazi shall retain new counsel on or before forty-five days from the date of this Court's accompanying Order.

                                                                    /s/ Susan D. Wigenton  
                                                 **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk  
cc:     Parties